HELENE N. WHITE, Circuit Judge,
dissenting in part.
I concur in all but Part II. C. of the majority opinion, and also join in the separate concurrence. Because I conclude Siemens has not met its burden of demonstrating it is a contractor entitled to immunity under the Kentucky Workers’ Compensation Act, I would reverse the judgment of the district court and remand plaintiffs’ claim against Siemens.
Pursuant to section 342.690 of the Kentucky Workers’ Compensation Act:
If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term “employer” shall include a contractor covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.
Ky.Rev.Stat. Ann. § 342.690. Section 342.610(2) provides:
A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the sub *454 contractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. Any contractor or his or her carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor.
Ky.Rev.Stat. Ann. § 342.610(2)(b) defines “contractor” as a person who contracts with another:
to have work performed of a kind which is a regular or recurrent part of the work, trade, business, occupation, or profession of such person....
The purpose of section 342.610(2) is to “discourage owners and contractors from hiring fiscally irresponsible subcontractors and thus eliminate workers’ compensation liability.” Matthews v. G & B Trucking, Inc., 987 S.W.2d 328 (Ky.Ct.App.1998). To further this purpose, the statute “im-postes] liability upon the ‘up-the-ladder’ contractor for compensation to the employees of a subcontractor unless the subcontractor has provided for the payment.” Pennington v. Jenkins-Essex Const., Inc., 238 S.W.3d 660, 663 (Ky.Ct.App.2006) (quoting Matthews, 987 S.W.2d at 330.) Because of the possible liability that contractors face under this statute, “an entity ‘up-the ladder’ from the injured employee that meets all the requirements of KRS § 342.610(2) is entitled to immunity under KRS § 342.690 and has no [tort] liability to the injured employee of the subcontractor.” Id. “[I]mmunity pursuant to the exclusivity provision of the Workers’ Compensation Act is an affirmative defense that must be established by the claimant.” Id. at 663-64.
Siemens’ predecessor, Voest Alpine International, Inc., entered into a contract with NAS to sell equipment for an electric arc furnace (the doghouse), and to design, manufacture, and install the furnace. Because Siemens is primarily an equipment supplier, it subcontracted with UGS to perform the installation work. Siemens contends it is an up-the-ladder employer of Dilts under KRS § 342.610(2)(b) because the installation work that it subcontracted to Dilts’s employer is a recurrent part of its business.
The record indicates that Siemens performs installation work in less than 5% of its contracts, has performed eight installations over the past ten years, only provides installation services when the customer demands it, and always subcontracts out the installation work because its employees do not perform that service. Siemens does not contend that installation is a regular part of its business. However, Siemens does claim that under Daniels v. LG & E, 933 S.W.2d 821, 824 (Ky.Ct.App.1996), installation is a recurrent part of its business. In Daniels, the defendant LG & E contracted with Total Source Analysis, Inc. (TSA), to conduct emissions testing at its coal-fired plant. Because environmental regulations only required LG & E to conduct emissions tests at periodic intervals, the testing was performed fourteen times over twenty-eight years. During one testing, a TSA employee was injured and subsequently sued LG & E. LG & E argued it was a contractor under Ky.Rev. Stat. Ann. § 342.610(2)(b), and thus immune from suit, because emissions testing was a regular or recurrent part of its business. Daniels, 933 S.W.2d at 823. The court rejected the employee’s argument that the sporadic nature of LG & E’s emissions testing meant it was not a regular or recurrent part of LG & E’s business and stated:
It is clear that LG & E has been required to perform the testing in the *455 past, it will be so required in the future, and it contracts with specialists to perform the services. “Recurrent” simply means occurring again or repeatedly. “Regular” generally means customary or normal, or happening at fixed intervals. However, neither term requires regularity or recurrence with the preciseness of a clock or calendar. LG & E simply tested when and as required. Therefore, LG & E must be considered within the statutory definition of a “contractor” and relieved from tort liability in accordance with KRS 342.690.
Id. at 824; see also Granus v. N. Am. Philips Lighting Corp., 821 F.2d 1253 (6th Cir.1987) (work done periodically as part of routine plant maintenance is regular and recurrent within the meaning of KRS § 342.610(2)(b)).
Subsequent to Daniels, the Kentucky Supreme Court clarified the meaning of “regular or recurrent” in General Electric Company v. Cain, 236 S.W.3d 579 (Ky. 2007). In Cain, the defendant businesses had contracted with various companies to have specific work performed on their premises. The plaintiffs were employees (or, where the employee had died, the estate of the employee) of the contracted companies who suffered from various diseases as a result of their exposure to asbestos while working on the defendants’ premises. Each business claimed immunity from suit under Ky.Rev.Stat. Ann. § 342.690. To determine whether immunity applied, the court evaluated whether the work performed by the various plaintiffs was a regular or recurrent part of each defendant’s business. The court explained:
Work of a kind that is a “regular or recurrent part of the work of the trade, business, occupation, or profession” of an owner does not mean work that is beneficial or incidental to the owner’s business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market ... It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.
The test is relative, not absolute. Factors relevant to the “work of the ... business,” include its nature, size, and scope as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform.
236 S.W.3d at 588 (emphasis added).
After discussing these governing principles, the Cain court proceeded to apply them to the numerous defendants. The Cain court remanded all claims asserted by one group of plaintiffs against General Electric because the record “contained no substantial evidence that the plaintiffs performed regular or recurrent work of a type that General Electric or similar businesses would perform or be expected to perform with employees.” 236 S.W.3d at 590. With respect to a different plaintiff who had worked on the premises of various defendants, the Cain court analyzed the work performed by the plaintiff at each location to determine whether that particular business was entitled to immunity. Where the plaintiffs work was either the same type of work, or not “significantly different” from the work performed by the business’s own employees, the business was immune. See, e.g., id. at 592, 594, 596, & 597. However, when the plaintiffs work was not the type performed by the busi *456 ness’s own employees, nor of a kind that similar businesses would be expected to perform with employees, the court found the business had shown it was entitled to immunity. See, e.g., id. at 598, 600 & 602. In one instance, the court found that even though the type of work a plaintiff performed at Ford Motor Company was performed on a regular or recurrent basis there, Ford had not established it was entitled to immunity because “no evidence showed the work was of a kind that Ford or similar business would normally expect or be expected to perform with employees.” Id. at 598.
To determine whether a business is immune from liability under Ky.Rev.Stat. Ann. § 842.690, the pertinent questions are whether the contracted work is 1) “customary, usual, or normal to the particular business” or “work that the business repeats with some degree of regularity;” and 2) “of a kind that the business or similar businesses would normally perform or be expected to perform with employees.” Cain, 286 S.W.3d at 588 (emphasis added). Thus, even if a particular business never uses its own employees to perform certain work, it will still be immune from liability under Kentucky’s Workers’ Compensation Act if that work is performed with some frequency and other businesses in that field would normally use their own employees to perform that type of work.
The record is devoid of any evidence demonstrating that equipment suppliers such as Siemens normally perform, or are expected to perform, installation work with employees. Accordingly, Siemens has not established that it is a contractor entitled to immunity under Kentucky’s Workers’ Compensation Act.