RENDERED: OCTOBER 16, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0961-MR

LOUISVILLE GAS AND ELECTRIC COMPANY                    APPELLANT


                          APPEAL FROM TRIMBLE CIRCUIT COURT
v.                        HONORABLE KAREN A. CONRAD, JUDGE
                          ACTION NO. 16-CI-00099


JOSE RAMIREZ GALVAN; PETROCHEM
INSULATION, INC.; ARCTIC SLOPE REGIONAL
CORPORATION; AND THOMPSON INDUSTRIAL
SERVICES, LLC                                          APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

ACREE, JUDGE:  Louisville Gas and Electric Company ("LG&E") appeals the

Trimble Circuit Court's denial of its motion for summary judgment on the basis of

"up-the-ladder" immunity.  LG&E asserts it is immunized from tort claims by the

Kentucky Workers' Compensation Act's exclusivity clause. Upon further review, we reverse the decision of the circuit court.

## BACKGROUND

LG&E provides electricity and natural gas to citizens in Kentucky. According to Mike Buckner, the General Manager of LG&E's Trimble County plant, LG&E schedules annual, biannual, and major outages in order to maintain, inspect, and repair the boilers located at its Trimble County plant.[1] Due to the size of the boilers, large scaffolding must be erected so employees and contractors can work throughout the interior of the boilers.[2]

LG&E contracted with Petrochem Insulation, Inc. ("Petrochem"), the direct employer of Jose Galvan, to erect the scaffolding necessary to maintain and repair the interior of its boilers during a 2015 scheduled outage. As part of the contract, LG&E required Petrochem to provide workers' compensation coverage to all its employees. LG&E also contracted with Thompson Industrial Services, LLC ("Thompson") to perform maintenance inside the boiler where Galvan suffered a workplace injury.

---

[1] Annual outages last approximately two weeks, biannual outages last approximately five to six weeks, and major outages, which occur every eight years, last approximately nine to ten weeks.

[2] Buckner testified in deposition that the size of the scaffolding erected varies, depending on the scope of work that must be done during the outage.

On October 11, 2015, both Petrochem and Thompson were given authority by different LG&E employees to begin their respective work. While Petrochem began erecting scaffolding at the interior base of the boiler, Thompson performed its duties from above. Thompson workers dislodged a large piece of refractory from the boiler; it fell and struck Galvan. He suffered severe injuries to his head, arm, ribs, and lungs, and received workers' compensation benefits from Petrochem.

In addition, Galvan filed a negligence claim against both LG&E and Thompson. LG&E moved for summary judgment, asserting the exclusivity provision of Kentucky's Workers' Compensation Act provided it with "up-the-ladder" immunity from tort claims. The circuit court denied its motion on April 16, 2019, concluding: (1) LG&E waived the affirmative defense by failing to provide sufficient proof that it carries workers' compensation insurance as required by KRS[3] 342.340(1); and (2) the scaffolding work was not a "regular and recurrent" part of LG&E's business and, therefore, it did not qualify as a "contractor" under KRS 342.610(2).

LG&E filed a CR[4] 54.02 motion, asking the circuit court to revise its order denying summary judgment. Attached to its motion was a sworn affidavit

---

[3] Kentucky Revised Statutes.

[4] Kentucky Rules of Civil Procedure.

from Daniel Arbough, the Treasurer of LG&E, which stated that LG&E is self-insured for purposes of workers' compensation insurance with excess insurance of $1 million. Also attached was a certificate of compliance from the Department of Workers' Claims and a copy of its insurance policy. The motion was denied on June 7, 2019. LG&E appealed from both the April 16 and June 7 orders.[5]

## STANDARD OF REVIEW

"The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Carter v. Smith*, 366 S.W.3d 414, 419 (Ky. 2012). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). We review the substance of the circuit court's ruling

---

[5] Before this Court and prior to briefing, Galvan moved to dismiss LG&E's appeal for failing to file a timely notice from the first order and for lack of jurisdiction as to the second. LG&E claimed the right to an interlocutory appeal because the question of immunity was at stake. This Court summarily denied Galvan's motion by interlocutory order entered August 16, 2019. We decline to revisit the interlocutory order because the immunity claimed is not immunity from liability, but immunity from the suit itself. *Labor Ready, Inc. v. Johnston*, 289 S.W.3d 200, 203 (Ky. 2009) (emphasis added) ("KRS 342.690(1) immunizes a contractor from tort *claims* by its subcontractors' employees"); *Hampton v. Intech Contracting, LLC*, 581 S.W.3d 27, 35 (Ky. 2019) (citing *Ervin Cable Constr., LLC v. Lay*, 461 S.W.3d 422 (Ky. App. 2015) and acknowledging interlocutory "appealability of an order denying an immunity claim based upon 'up-the-ladder immunity'" because in "*Ervin* there was immunity from suit . . . .").

on a summary judgment motion *de novo*. *Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572, 576 (Ky. 2019).

## ANALYSIS

The exclusivity provision in the Kentucky Workers' Compensation Act provides:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . . For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610 . . . .

KRS 342.690(1). The Act defines a "contractor" as one who contracts with another "[t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person[.]" KRS 342.610(2)(b). And, as noted above, to take advantage of the exclusivity provision, the contractor must secure payment of compensation pursuant to KRS 342.340(1).

Accordingly, if a party qualifies as a contractor and has secured workers' compensation coverage, "it has no liability in tort to an injured employee of a subcontractor." *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 461 (Ky. 1986). "In other words, tort immunity under the Act extends 'up the ladder' from the subcontractor that employs an injured person to the entities that

-5-

contracted with the subcontractor . . . ." *Cabrera v. JBS USA, LLC*, 568 S.W.3d 865, 869 (Ky. App. 2019).

In this appeal, we must address whether LG&E submitted sufficient evidence that it secured workers' compensation coverage under KRS 342.340(1) and whether the erection of large scaffolding is a regular or recurrent part of its business, thereby qualifying LG&E as a contractor. We answer both questions in favor of LG&E.

### *LG&E presented sufficient evidence of compliance under KRS 342.340(1)*

In denying summary judgment, the circuit court *sua sponte* ruled that LG&E waived "up-the-ladder" immunity because it failed to present sufficient evidence that it secured coverage in compliance with KRS 342.340(1). We disagree.

The circuit court's reliance on *McDonald's Corporation v. Ogborn* to resolve this question was misplaced; that case presented a dramatically different set of facts. 309 S.W.3d 274, 283-85 (Ky. App. 2009). In that case, McDonald's sought immunization under the Workers' Compensation Act from a claim brought by one of its direct employees. This Court held McDonald's failed to provide sufficient evidence of its compliance with KRS 342.340(1). *Id*. at 284.

In the case at bar, LG&E is not seeking immunity from a claim brought by a direct employee. Of course, if this were the case, LG&E would be

required to provide sufficient evidence that it secured workers' compensation coverage. Instead, LG&E is seeking immunity from a claim brought by an employee of one of its subcontractors. The distinction is key, as this Court has held "an up-the-ladder contractor is immune from tort liability to an injured employee of a subcontractor if it proves that the immediate employer of the injured employee had secured coverage for the employee." *Pennington v. Jenkins-Essex Const., Inc.*, 238 S.W.3d 660, 666 (Ky. App. 2006). Therefore, it was enough that LG&E provided evidence that Galvan received benefits from his direct employer, Petrochem. *See Cabrera*, 568 S.W.3d at 869 (emphasis added) ("[T]ort immunity under the Act extends 'up the ladder' from the subcontractor that employs an injured person to the entities that contracted with the subcontractor, *so long as the injured person's employer has workers' compensation coverage . . . .*").

This rationale is consistent with one of the purposes of the Workers' Compensation Act: "to discourage owners and contractors from hiring fiscally irresponsible subcontractors and thus eliminate workers' compensation liability." *Matthews v. G & B Trucking, Inc.*, 987 S.W.2d 328, 330 (Ky. App. 1998). In this case, LG&E required Petrochem to maintain workers' compensation coverage. There is no dispute that Petrochem maintained, and Galvan received, such benefits. We conclude this is sufficient to establish necessary compliance with KRS 342.340(1).

We also remind the circuit court that, despite Galvan's argument to the contrary, LG&E's motion was not brought pursuant to CR 59.05, which applies only to reconsideration of a final judgment. The April 16, 2019 order was not final, but interlocutory, and LG&E wanted the circuit court to revisit that order and reconsider its decision therein to deny summary judgment. LG&E's motion clearly sought revision of the April 16, 2019 interlocutory order pursuant to CR 54.02. That rule allows "revision [of that prior interlocutory order] at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." CR 54.02(1). A CR 59 motion "is an extraordinary remedy which should be used sparingly[.]" *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005) (citation omitted). Not so much with a motion brought pursuant to CR 54.02(1). Unlike CR 59 movants, a CR 54.02(1) movant is not limited to presenting arguments or evidence previously unavailable. *Id.* ("A party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment."). It was appropriate for LG&E to bring attention to additional information that eliminated fact issues preventing the circuit court from finding Galvan had workers' compensation coverage, a key element to LG&E's claim to "up-the-ladder" immunity.

As noted above, LG&E presented the court with: (1) a sworn affidavit from LG&E's treasurer, stating LG&E is self-insured for purposes of workers' compensation insurance with excess insurance of $1 million; (2) a certificate of compliance from the Department of Workers' Claims certifying compliance with KRS 342.340; and (3) a copy of its insurance policy. The certificate of compliance, by itself, "is prima facie proof that a company has secured payment of compensation for the purposes of KRS 342.690(1)." *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 605 (Ky. 2007), *as modified on denial of reh'g* (Nov. 21, 2007).

We conclude LG&E presented sufficient evidence to establish it secured workers' compensation coverage under KRS 342.340(1).

### *LG&E qualifies as a contractor and is entitled to immunity*

The circuit court also concluded LG&E failed to demonstrate "that the scaffolding work provided by [Galvan] and Petrochem was a 'regular and recurrent' part of its business such to qualify as a contractor per KRS 342.610." Specifically, it was not convinced "that the work, while important, was so integral to the generation and transmission of electricity that it should be considered a customary, usual, or normal part of the work of electrical generation and transmission, as opposed to merely beneficial or incidental to operation of the business." Because we find this view too narrow, we disagree.

In *General Electric Company v. Cain*, our Supreme Court reiterated

the meaning of regular or recurrent:

> *Webster's New College Dictionary* 928 (1995), defines "recurrent" as "occurring or appearing again or repeatedly," which would apply to, *e.g.*, routine maintenance. It defines "regular" as "customary, usual or normal." *Webster's*, *supra*, at 934. Therefore, as used in KRS 342.610(2)(b), "regular" means that the type of work performed is a "customary, usual or normal" part of the [] owner's "trade, business, occupation, or profession," including work assumed by contract or required by law. "Recurrent" means that the work is repeated, though not "with the preciseness of a clock."

236 S.W.3d at 586-87 (citation omitted). That Court went on to conclude:

> Work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. *Larson's*, *supra*, at § 70.06[10].[6] It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

*Id.* at 588. "[W]e must construe the role of contractor in a practical and functional

—not hypertechnical—way." *Beaver v. Oakley*, 279 S.W.3d 527, 532 (Ky. 2009).

---

[6] ARTHUR LARSON AND LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW (2006).

-10-

Here, the scaffolding work done by Galvan was recurrent.  At a minimum, large-scale scaffolding, either full-scale or half-scale, is erected during annual, biannual, and major outages.  It is also regular.  Buckner noted in his affidavit that Petrochem had maintained an office at the Trimble County plant continuously from 2004 to 2016 and provided scaffolding work during both normal operations and during scheduled outages.  Erecting large scaffolding inside the boilers is undoubtedly the customary, usual, and normal way LG&E maintains and repairs its boilers.

The circuit court emphasized, as a reason for denying summary judgment, that LG&E was not "equipped with the manpower and tools . . . to complete the task for which Petrochem had been hired[.]"[7]  However, this is not a requirement for finding LG&E was a contractor of such work.  "A contractor that never performs a particular job with its own employees can still come within KRS 342.610(2)(b)."  *Doctors' Assocs., Inc. v. Uninsured Employers' Fund*, 364 S.W.3d 88, 92 (Ky. 2011); *see also Cabrera*, 568 S.W.3d at 869-70 ("Persons or entities who engage another to perform a part of the work which is a recurrent part of their business, trade, or occupation are considered 'contractors' under the Act even if they *never* perform that type of work with their own employees.").  Simply put, that LG&E did not store the equipment necessary or have employee specialists

---

[7] The June 7, 2019 order referenced this language from the April 16, 2019 order.

standing idly by waiting to perform the infrequent periodic work does not disqualify LG&E as a contractor entitled to "up-the-ladder" immunity. We conclude that erecting large-scale scaffolding is a regular and recurring part of LG&E's business and LG&E contracted with Petrochem to perform that necessary work. Accordingly, LG&E was a contractor and Petrochem a subcontractor within the meaning of KRS 342.610. Therefore, this Court concludes that the record clearly supports LG&E's claim to "up-the-ladder" immunity from Galvan's lawsuit.

## CONCLUSION

Based on the foregoing, we reverse the April 16, 2019 and June 7, 2019 orders of the Trimble Circuit Court and remand with instructions to dismiss the action against LG&E.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Travis Aaron Crump
Griffin Terry Sumner
Louisville, Kentucky

BRIEF FOR APPELLEE JOSE
RAMIREZ GALVAN:

Randal A. Strobo
Clay A. Barkley
Michael T. Cooper
Louisville, Kentucky